## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

SAM H. MASSENGILL, on behalf of
PATRICIA L. MASSENGILL, deceased,

      Plaintiff,

v.                                 Case No. 2:13-cv-01085-JB-CG

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision* with *Plaintiff's Memorandum Brief in Support of Motion to Reverse or Remand Administrative Agency Decision* (together the "Motion"), filed on May 28, 2014, (Docs. 25 and 25-1); Defendant's *Social Security Response Brief* ("Response"), filed on July 29, 2014, (Doc. 28); and *Plaintiff's Reply to the Commissioner's Response* ("Reply"), filed on August 11, 2014, (Doc. 29). The case was referred to this Court by U.S. District Judge James O. Browning, to make findings of fact and recommend an ultimate disposition of the case. (Doc. 22).

On April 3, 2007, Patricia L. Massengill filed an application for disability insurance benefits, alleging disability beginning July 5, 2006.[1] (Administrative Record ("AR") 45, 285–87, 317). Her application was initially denied on August 1, 2007, (AR 155), and

---

[1] Mrs. Massengill's claim for disability insurance was for the closed period beginning on July 5, 2006, and extended through June 30, 2011, which was the last day that she was insured for disability insurance benefits. (AR 47, 300).

also upon reconsideration on October 29, 2007. (AR 156). Mrs. Massengill filed a written request for a hearing on August 12, 2008, (AR 195–96); a hearing was held before Administrative Law Judge ("ALJ") George W. Reyes on September 23, 2009. (AR 64–104). On January 28, 2010, ALJ Reyes denied Mrs. Massengill's application for disability benefits. (AR 157–69).

Mrs. Massengill subsequently requested that the Appeals Council review ALJ Reyes' decision. (AR 175). The Appeals Council granted review, and vacated and remanded ALJ Reyes' decision with a list of issues to be resolved by the ALJ on remand. (AR 175–77).

A second hearing was held on December 2, 2011, before ALJ Barry Robinson. (AR 105–54). Mrs. Massengill and Mary Diane Weber, an impartial vocational expert, testified at the hearing. *Id.* ALJ Robinson issued his opinion on May 10, 2012, finding that Mrs. Massengill was not disabled under 20 C.F.R. § 404.1520(g). (AR 42–57). Mrs. Massengill subsequently filed a timely application for review with the Appeals Council. (AR 41).

On January 19, 2013, Mrs. Massengill died from acute respiratory failure as a consequence of drug toxicity, at the age of 49. (AR 30). Sam H. Massengill, as Mrs. Massengill's surviving spouse, subsequently filed a *Notice Regarding Substitution of Party upon Death of Claimant* with the Administration.[2] (AR 33). The Appeals Council denied Mrs. Massengill's request for review of ALJ Robinson's decision on September 12, 2013, making his denial of her disability benefits application the final decision of the

---

[2] Upon her death, Mrs. Massengill's husband was substituted as the party at interest for her claim, pursuant to 42 U.S.C. § 404(d) and 20 C.F.R. § 503(b) (2012). Nevertheless, the Court refers to Mrs. Massengill, because she was the claimant in the administrative proceedings. *See, e.g.*, *Kilinski v. Astrue*, 430 Fed. Appx. 732, 734 n.1 (10th Cir. 2011).

Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal. (AR 5–11). Mr. Massengill brings this appeal of the Commissioner's final administrative decision on Mrs. Massengill's behalf. *See* 42 U.S.C. § 404(d); *see also* 20 C.F.R. § 503(b).

Mrs. Massengill complains that the ALJ committed reversible, legal error by: (1) failing to provide sufficiently specific reasons for rejecting portions of the opinion provided by an examining, consulting psychologist; (2) rendering a residual functioning capacity ("RFC") finding unsupported by substantial evidence; and (3) discounting her credibility for reasons unsupported by substantial evidence. (Doc. 25-1). Mrs. Massengill also requests that the Court reverse the Commissioner's decision and remand the case for an immediate award of benefits. *Id.* at 24–25.

The Court has reviewed the Motion, the Response, the Reply, and the relevant law.  Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to properly explain his reasons for rejecting significantly probative portions of one of the medical opinions in the record, the Court recommends that the Motion be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

## I.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct

3

legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

### III. Background

Mrs. Massengill initially applied for disability benefits alleging depression, status-post neck fusion, problems with her right foot, hepatitis C, and chronic obstructive pulmonary disease ("COPD"). (AR 321). She explained that her neck pain and associated arm pain, along with sadness over the death of her son, prevented her from working. *Id.* The administrative record includes her medical records, earnings records, work history report, disability application, hearing testimony, examining consultative reports, and non-examining State agency evaluations.

At step one, the ALJ determined that Mrs. Massengill had not engaged in substantial gainful activity during the closed period. (AR 47). At step two, the ALJ concluded that Mrs. Massengill was severely impaired by a cognitive disorder, depression, bipolar disorder, a history of substance abuse, residual degenerative disc disease, and residual pain status-post right foot surgery. *Id.* The ALJ determined that Mrs. Massengill's COPD and hepatitis C were non-severe impairments. (AR 48).

At step three, the ALJ explained that he considered whether Mrs. Massengill's impairments satisfied or met any of the listings for a cervical spine disorder or a mental disorder. (AR 48–50). The ALJ ultimately found that none of Mrs. Massengill's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, or 404.1526. *Id.*

The ALJ proceeded to step four, and first determined Mrs. Massengill's RFC. He considered Mrs. Massengill's subjective complaints and the objective medical evidence in the record, and concluded that her testimony was not fully credible. (AR 50–51). The ALJ found that Mrs. Massengill could perform a restricted range of light work, as that

term is defined in 20 C.F.R. § 404.1567(b), and never climb ladders, ropes, and scaffolds, but she could occasionally climb ramps and stairs, and  frequently balance, stoop, kneel, crouch, and crawl. (AR 50). The ALJ also found that Mrs. Massengill was able to: (i) understand, remember, and carry out simple instructions and make simple decisions; (ii) concentrate for up to two hours in duration; (iii) have occasional contact with supervisors and co-workers but no contact with the public, and work with things rather than people; and (iv) respond appropriately to change in a routine work environment. *Id.*

In making the Mental RFC finding, the ALJ discussed the medical opinions of two consulting psychologists. The ALJ considered the evaluation and report by consulting psychologist Mary Ann Cotten, Ph.D, dated June 23, 2007. (AR 52–53). Dr. Cotten evaluated Mrs. Massengill on June 6, 2007 and administered the Wechsler Adult Intelligence Scale-III exam. (AR 422–430). She diagnosed Mrs. Massengill with bipolar disorder, cannabis abuse, alcohol and amphetamine abuse in sustained full remission, and borderline intellectual functioning. (AR 429). She also diagnosed psychosocial and environmental problems, stemming from occupational, financial, academic, and educational issues. *Id.* She further determined that Mrs. Massengill's Global Assessment of Functioning ("GAF") score was 50, signifying moderate to marked symptoms and difficulties with functioning. *Id.*

Dr. Cotten made a "highly guarded" prognosis of Mrs. Massengill, finding that her social interactions were limited to a moderate degree, because she "is likely to be easily frustrated, feel overwhelmed, and experience increased difficulties with cognitive processing when under unfamiliar circumstances and/or situations." (AR 429–30). She

wrote that Mrs. Massengill would likely "demonstrate moderately to markedly limited abilities in dealing with people as well as is (sic) capable of adapting to changes and/or functioning in the workplace." (AR 430). She noted that Mrs. Massengill's social and occupational functioning was moderately to markedly limited, because she would become easily frustrated whenever subjected to unpredictable activities, and that increased stress would negatively influence her cognitive and emotional functioning. *Id.* Dr. Cotten concluded that Mrs. Massengill experiences "moderate to marked limitations with respect to what she can emotionally manage," and that she was "functioning at a much lower than expected level for an adult woman her age." *Id.* She was 44 years-old at the time of Dr. Cotten's evaluation.

The ALJ summarized Dr. Cotten's medical opinion as assigning moderate and marked limitations to Mrs. Massengill's social and occupational function. (AR 53). He concluded that Dr. Cotten found Mrs. Massengil unable to deal with people, but capable of adapting to changes and being able to function in the workplace. *Id.* Without giving any reasons for doing so, the ALJ granted significant weight to Dr. Cotten's evaluation, including Dr. Cotten's assessment of Mrs. Massengill's social functioning. *Id.*

 On August 1, 2007, J. Leroy Gabaldon, Ph.D., a State Agency psychological consultant, completed a Psychiatric Review and Mental Residual Functional Capacity Assessment of Mrs. Massengill. (AR 440–57). Dr. Gabaldon reviewed Dr. Cotten's evaluation, and noted that Dr. Cotten's functional assessment appeared consistent with Mrs. Massengill's reported abilities. (AR 456). Dr. Gabaldon opined that Mrs. Massengill had no limitations in her ability to ask simple questions or request assistance, maintain socially appropriate behavior, or adhere to basic standards of neatness and cleanliness.

(AR 455). However, he noted moderate limitations in her capacity to interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, and get along with co-workers and peers. *Id.* Dr. Gabaldon also assigned moderate limitations to Mrs. Massengill in all of the "Adaptation" categories, including her ability to respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, and set realistic goals or make plans independently of others. *Id.*

Dr. Gabaldon further explained that he believed that Mrs. Massengill could interact adequately with co-workers and supervisors, and respond appropriately to changes in a routine work setting. (AR 456). The ALJ granted significant weight to his opinion without explaining his reasons for doing so. (AR 52). He also determined that while he concurred with Dr. Gabaldon's opinion, he would "give [Mrs.] Massengill the benefit of the doubt regarding any difficulties she may have in dealing with people." (AR 52).

The ALJ also noted that Mrs. Massengill had been examined for mental health issues by the Counseling Center, Inc. on September 8, 2009 and on August 12, 2009, and that her GAF scores on those dates were calculated as 55 and 49, respectively. (AR 542). On September 28, 2011, she was seen by John Flores, M.D., a pain specialist; the ALJ noted that his examination revealed no anxiety or depression. (AR 678–80).

Next, the ALJ considered whether Mrs. Massengill was capable of doing any of her past relevant work. (AR 55). The ALJ explained that Mrs. Massengill's past relevant work only included the job of convenience store cashier, and that Mrs. Massengill was

precluded from doing that work because it would require frequent contact with the public. *Id*. Therefore, Mrs. Massengill was unable to do her past relevant work in light of the ALJ's RFC finding. *Id*.

At step five, the ALJ determined whether Mrs. Massengill would be able to perform any other work existing in significant numbers in the national economy. (AR 55–57). The ALJ found that during the closed period, Mrs. Massengill was categorized as a "younger individual age 18-49," with a limited 9th grade education and English-language skills.[4] (AR 55). The vocational expert stated that an individual with Mrs. Massengill's same age, education, work experience, and RFC could perform the jobs of cleaner and polisher, garment folder, and garment bagger. (AR 149–50). The vocational expert testified that those jobs existed in significant numbers in the national economy. *Id*. After finding that the vocational expert's testimony was consistent with the Dictionary of Occupational Titles, the ALJ adopted her testimony. (AR 57).

The ALJ therefore concluded that because Mrs. Massengill was capable of performing work existing in significant numbers in the national economy, she was not disabled. (AR 57).

### IV. Analysis

The ALJ determined that Mrs. Massengill had the RFC to perform a restricted range of light work. Mrs. Massengill contends that the ALJ's failure to include additional limitations due to her mental impairments was legal error, because he did not provide any reasons for discounting portions of Dr. Cotten's medical opinion. She further argues that the RFC is unsupported by substantial evidence because the ALJ did not consider

---

[4] Mrs. Massengill was ages 43 through 48 during the closed period.

all of the evidence of disability that was in the record. Last, Mrs. Massengil complains that the ALJ improperly weighed her credibility, because the finding is unsupported by substantial evidence.

The Commissioner responds that the ALJ properly accounted for Dr. Cotten's medical opinions in making the RFC finding. The Commissioner also maintains that the ALJ considered all of the evidence related to Mrs. Massengill's impairments that was in the record, and assigned to Mrs. Massengill the limitations that the evidence reasonably supported. Finally, the Commissioner argues that the ALJ's credibility assessment of Mrs. Massengill's subjective complaints adheres to proper legal standards.

### A. _Dr. Cotten's Mental Health Evaluation_

Mrs. Massengill challenges the ALJ's consideration of Dr. Cotten's medical opinion. She argues that the ALJ erred by not properly explaining why she rejected portions of Dr. Cotten's medical opinion which support a more restrictive Mental RFC finding. She points out that, while the ALJ afforded Dr. Cotten's medical opinion significant weight, he deviated from Dr. Cotten's opinion regarding two areas of mental functioning. Specifically, she contends that Dr. Cotten's opinion suggests that she would not be able to respond appropriately to supervision, co-workers, and usual work situations, or deal with changes in a routine work setting. Mrs. Massengill reasons that if the ALJ had found her to be substantially limited in either of those areas of functioning, the ultimate finding as to disability would be affected. Mrs. Massengill contends that the ALJ committed reversible legal error by failing to provide sufficiently specific reasons for rejecting some portions of Dr. Cotten's medical opinion, while adopting other portions, even if the rejection was implicit.

11

The Commissioner responds that all of Dr. Cotten's medical opinions were properly incorporated into the ALJ's RFC finding, and therefore Mrs. Massengill's argument fails.

### 1.    *The ALJ was Required to Properly Evaluate Dr. Cotten's Medical Opinion*

The Regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(d). A medical opinion is a statement from a physician, psychologist, or other acceptable medical source that reflects judgments about the nature and severity of the claimant's impairment(s), including their symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment(s), and physical or mental restrictions. 20 C.F.R. § 416.927(a)(2). The level of deference a non-treating physician's opinion receives must be determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Goatcher v. U.S. Dept. Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (citing 20 C.F.R. §§ 404.1527(d)(2)–(6)). The ALJ must give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately assigns to the opinion. *See Langley*, 373 F.3d at 1119 (citations omitted).

### 2.    <u>*The ALJ's Consideration of Dr. Cotten's Medical Opinions*</u>

It is undisputed that Dr. Massengill was a consultative psychological examiner who evaluated Mrs. Massengil during the closed period. (AR 52). Mrs. Massengill

12

argues that, despite granting Dr. Cotten's evaluation significant weight, the ALJ diverged from her opinion in two respects. First, in the area of social functioning, the ALJ only limited Mrs. Massengill to having occasional contact with supervisors and co-workers and no contact with the public, and to jobs working with things rather than people. However, the ALJ did not find that Mrs. Massengill had any limitations in responding appropriately to usual work situations. Second, in the area of adaptation, the ALJ found that Mrs. Massengill was able to respond appropriately to changes in a routine work setting.

Mrs. Massengill argues that, based on Dr. Cotten's medical opinion, the ALJ should have assessed more restrictive limitations in these two areas. She contends that the ALJ's failure to adopt all of Dr. Cotten's medical opinion into the RFC finding amounted to an implicit rejection of some portions of Dr. Cotten's opinion. She also points out that a substantial loss of ability to respond appropriately to supervision, co-workers, or usual work situations, or deal with changes in a routine work setting, would justify a finding of disability. *See* Social Security Rulings ("SSR") 85-15, 1985 SSR LEXIS 20, at *11 (1985) ("a substantial loss of ability to meet [either] of these basic work-related activities would . . . justify a finding of disability").

The Commissioner responds that Dr. Cotten's entire medical opinion was granted significant weight, no portion was rejected, and her findings are reflected in their entirety throughout the RFC finding. For example, the ALJ explained that he would not adopt the less restrictive medical opinion of Dr. Gabaldon as to Mrs. Massengill's ability to interact with others, because he was "giv[ing] Mrs. Massengill the benefit of the doubt regarding any difficulties she may have in dealing with people, as noted by Dr. Cotten,"

and that the RFC finding would reflect those limitations. (AR 52). The Commissioner points out that the ALJ considered Dr. Cotten's opinion that Mrs. Massengill is likely to have moderate to marked limitations in her abilities to deal with people, and therefore limited her to only occasional contact with supervisors and co-workers, no contact with the public, and to jobs working with things rather than people. (AR 55). The ALJ also concluded that Dr. Cotten found that Mrs. Massengill had no limitations in the area of adaptation. (AR 57).

The record demonstrates that Dr. Cotten assigned moderate to marked limitations to Mrs. Massengill in the areas of social and occupational functioning, and in her ability to manage her emotions in a work setting. She opined that Mrs. Massengill was likely to be easily frustrated, feel overwhelmed, and experience increased cognitive difficulties when dealing with unfamiliar circumstances or situations. (AR 430). She further noted that Mrs. Massengill would become easily frustrated when subjected to unpredictable activities and increased stress, which would negatively impact her cognitive and emotional functioning. (AR 430). Dr. Cotten opined that Mrs. Massengill had difficulty managing her emotions and appropriately responding to unpredicted activities, even during routine work. Further, Dr. Cotten noted that Mrs. Massengill would be easily frustrated when subjected to unpredictable activities.

Any impairment-related limitations created by an individual's response to demands of work must be reflected in the RFC assessment. *Jaramillo v. Colvin*, 2014 U.S. App. LEXIS 16536, at *10 (10th Cir. Aug. 27, 2014) (unpublished) (citing SSR 85-15, 1985 SSR LEXIS 20, at *16). In formulating the RFC, the ALJ is required to express non-exertional capacity, which includes mental limitations, in terms of "work-related

functions" or "work-related mental activities." *Jaramillo*, 2014 U.S. App. LEXIS 16536, at *9 (citing SSR 96-8p, 1996 SSR LEXIS 5, at *17) (alterations omitted). Under SSR 85-15, "[t]he basic mental demands of competitive, remunerative, unskilled work" include the abilities, on a sustained basis, to: (i) respond appropriately to usual work situations; and (ii) deal with changes in a routine work setting. 1985 SSR LEXIS 20, at *11. These abilities are examples of work-related mental functions. *Jaramillo*, 2014 U.S. App. LEXIS 16536, at *11 (citations omitted). The Rulings further advise that "the mentally impaired may have difficulty meeting the requirements of even so-called 'low-stress' jobs." SSR 85-15, 1985 SSR LEXIS 20, at *15.

Therefore, the Court finds that Dr. Cotten assigned moderate to marked limitations to Mrs. Massengill in the areas of social functioning and adaptation. The Tenth Circuit has held that an ALJ's failure to formulate an RFC that considers even moderate limitations identified in a non-examining consulting physician's Mental Residual Capacity Assessment to be reversible error. *Frantz v. Astrue*, 509 F.3d 1299, 1302–03 (10th Cir. 2007). That Court has explained that "[a] moderate impairment is not the same as no impairment at all." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). A medical opinion that a claimant has a moderate limitation in an area of functioning "supports the conclusion that the individual's capacity to perform the activity is impaired." *Jaramillo*, 2014 U.S. App. LEXIS 16536, at *11(quoting *Program Operations Manual System* ("POMS") DI 24510.063 B.2, Soc. Sec. Admin. (Oct. 14, 2010) https://secure.ssa.gov/poms.nsf/lnx/0424510063)).

Therefore, the Court also finds that the RFC did not accurately reflect all of the mental functioning limitations that were ascribed by Dr. Cotten. The Court recognizes

that the ALJ concluded that Dr. Cotten found Mrs. Massengill to be capable of social functioning and adapting to change in the workplace. [5] However, the ALJ failed to address and reconcile any of the apparent inconsistencies in Dr. Cotten's opinion as to these areas of functioning. In consideration of the above, the Court finds that the ALJ's RFC finding was not a reflection of Dr. Cotten's opinions regarding Mrs. Massengill's ability to respond to usual work situations or adapt to change.

Mrs. Massengill contends that the ALJ's analysis of those portions of Dr. Cotten's opinion was legally deficient. The ALJ purported to grant significant weight to all of Dr. Cotten's opinion, but failed to state any reasons for affording the opinion that weight. As explained above, the ALJ was required to consider the deference factors and give sufficiently specific reasons for the weight that she granted Dr. Cotten's opinion. The ALJ was also required to discuss any uncontroverted evidence that he did not rely upon, as well as the significantly probative evidence that he rejected, in addition to the evidence supporting his decision. *See Frantz*, 509 F.3d at 1303; *see also Haga*, 482 F.3d at 1208.

Dr. Cotten's opinions regarding Mrs. Massengill's social and adaptive functioning were significantly probative, and arguably even uncontroverted. Dr. Gabaldon's medical opinion may even bolster Dr. Cotten's conclusions. For example, Dr. Gabaldon also ascribed moderate limitations to Mrs. Massengill in the areas of social functioning and adaptation. Dr. Gabaldon opined that Mrs. Massengill had moderate limitations in all of

---

[5] In making her finding, the ALJ appears to have relied solely on the following statement in Dr. Cotten's evaluation: "Mrs. Massengill is likely to demonstrate moderately to markedly limited abilities in dealing with people as well as is (sic) capable of adapting to changes and/or functioning in the workplace." (AR 430). The Court recognizes that, isolated from the rest of her opinion, the sentence could be interpreted to mean that Dr. Cotten found no limitations in the area of adaptation. However, when considered in context with the rest of Dr. Cotten's "highly guarded" prognosis and evaluation, it cannot provide the requisite evidentiary support for the ALJ's conclusion.

the adaptation categories, including her ability to respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, travel in unfamiliar places, and set realistic goals or make plans independently of others.[6] (AR 455).

The ALJ was required to explain why he implicitly rejected Dr. Cotten's opinions in these mental functioning areas by not incorporating them into his RFC finding. Because the ALJ failed to give any reasons for granting Dr. Cotten's opinion significant weight or for discounting any portion of her opinion, the Court must remand this case to allow the ALJ to explain his treatment of the Mental RFC evidence.

Moreover, the ALJ's hypothetical questions to the vocational expert did not clearly relate all of the non-exertional impairments that Dr. Cotten assessed. The Rulings require the ALJ to express such impairments "in terms of work-related functions" or "[w]ork-related mental activities," SSR 96-8p, 1996 SSR LEXIS 5, at *17. A claimant's capacity to perform the activity "must be related with sufficient precision in a dispositive hypothetical to a [vocational expert] and in an RFC finding." *Jaramillo*, 2014 U.S. App. LEXIS 16536, at *13. Therefore, the Court cannot find that the ALJ's disability finding, which relied on the jobs that were identified by the vocational expert in response to the ALJ's hypothetical questions, was supported by substantial evidence. *Jaramillo*, 2014 U.S. App. LEXIS 16536, at *14 (citing *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)).

---

[6] The Court recognizes that in another section of his evaluation, Dr. Gabaldon concluded that Mrs. Massengill could respond appropriately to changes in a routine work setting. However, the ALJ did not resolve this apparent inconsistency in his opinion, and granted Dr. Gabaldon's findings significant weight without providing any explanation.

The ALJ's analysis of Dr. Cotten's opinion, along with his consideration of the other evidence of Mrs. Massengill's mental impairments, does not allow meaningful review of the RFC determination. The ALJ's failure to fully explain his reasoning constitutes legal error, and this case will be remanded. On remand, the ALJ should also be mindful to resolve any ambiguities or conflicts in the record, particularly Dr. Cotten's opinion concerning Mrs. Massengill's abilities in the area of adaptation. *See Thomas v. Barnhart*, No. 04-7141, 147 Fed. Appx. 755, 760 (10th Cir. Sept. 2, 2005) (unpublished) ("If the ALJ believes that the medical record regarding [claimant's] mental impairments is insufficient and needs to be further developed, the ALJ must do so.").

   B.   *Request for Immediate Award of Benefits*

Plaintiff requests that the Court reverse the decision of the Commissioner and remand the case for an immediate award of disability benefits. The decision of whether to remand a case for additional fact-finding or for an immediate award of benefits is within the discretion of the district court. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). To make this decision, the Court considers the length of time the matter has been pending and whether additional fact-finding would serve any useful purpose or merely delay the receipt of benefits. *See Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Here, the length of time this matter has been pending is not unusual for a case which has been evaluated by an ALJ and the Appeals Council twice, especially in light of the backlog at the Administration's Office of Disability Adjudication Review. (*See* Doc. 13). Further, as discussed above, additional factual development by the ALJ is

18

required.[7] The ALJ may also need to elicit new vocational expert testimony in light of any changes made to the Mental RFC upon reconsideration of the evidence. Under these circumstances, the Court will take heed not to assume the role of fact-finder and substitute its judgment for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

For all of the foregoing reasons, the facts of this case do not necessitate an immediate award of benefits at this time. The Court therefore recommends that Mrs. Massengill's request for an immediate award of benefits be denied.

## V.  Conclusion

The Court holds that the ALJ committed reversible legal error by failing to state her reasons for rejecting medical opinions that were significantly probative of Mrs. Massengill's mental functional abilities during the closed period. The omission constitutes substantial legal error necessitating a remand for further proceedings consistent with the discussion herein. On remand, the Commissioner should make every reasonable effort to properly develop the record and resolve any ambiguities in the medical opinions at issue. The Court does not decide any other issue raised by Mrs. Massengill on appeal, as these matters would be mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 25), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Proposed Findings and Recommended Disposition.

---

[7] The Court recognizes that Mrs. Massengill is deceased, which may inhibit further fact-finding by the Commissioner. However, the Court cannot find that the circumstance of her death, by itself, justifies an immediate award of benefits at this time.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE